**David LEATHERS and Gail Leathers, Plaintiffs,**

v.

**PEORIA TOYOTA–VOLVO, Defendant.**

No. 92–1430.

United States District Court, C.D. Illinois, Peoria Division.

June 1, 1993.

James S. Brannon, Peoria, IL, for plaintiffs.

Timothy J. Cassidy, Cassidy & Mueller, Peoria, IL, for defendant.

## ORDER

McDADE, District Judge.

Before the Court is Plaintiffs' Motion for Summary Judgment. Because the Defendant has failed to respond pursuant to Local Rule 2.9(B), the Court has reviewed the merits of Plaintiffs' motion without benefit of a response and concludes that summary judgment must be granted as a matter of law.[1]

### I. BACKGROUND

This action was filed pursuant to the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), specifically § 1638(a)(9) and the regulations promulgated thereto.[2] Plaintiffs allege that they are entitled to judgment as a matter of law in the amount of $1,000 plus attorney's fees and costs, because Defendant did not properly disclose "the fact that it has or will acquire a [security] interest" in the car Plaintiffs purchased "as part of [a] credit transaction."

### A. *The Facts*

On or about September 30, 1991, Plaintiffs, David W. and Gail E. Leathers, purchased a used car from Defendant, Peoria Toyota Volvo, borrowing $4,533.84 from Defendant to finance the purchase. According to Plaintiffs, "Defendant, on a form prepared by it, delivered to Plaintiffs a "Retail Installment Contract" which included both the Security Agreement ["Agreement"] and a Truth In Lending Disclosure Statement." Plaintiffs signed the contract.

---

1. *Wienco, Inc. v. Katahn Association, Inc.*, 965 F.2d 565 (7th Cir.1992) (where opposing party fails to respond pursuant to local rule, summary judgment does not automatically result, rather the district court must find on the merits that "given the undisputed facts, summary judgment is proper as a matter of law.")

2. In their Complaint, Plaintiffs allege that the transaction at issue violates TILA "Regulation Z, 12 C.F.R. part 226.18(m)." The relevant regulations also include § 226.17(a) and (b).

The contract contains a group of disclosures in what is commonly referred to as the "Federal Box," entitled **"Truth In Lending Disclosures."** The annual percentage rate, the finance charge, the amount financed, the total [number] of payments, and the payment schedule is set out clearly and conspicuously at the top of the box. The Agreement is set out at the bottom of the box in extremely small print and without any distinguishing features by which to call attention to it. The Agreement provides three alternatives with empty boxes where a check mark is inserted designating the type of security promised. In this case, the Agreement states that Plaintiffs, as purchasers, agreed to give a security interest in a "right of set-off against any moneys, credits or other property ... in the possession of the Holder." At the bottom of the contract, outside the Federal Box, is a paragraph which reads as follows:

**Security Interest:** Seller shall have a security interest under the Uniform Commercial Code in the Property (described above) and in the proceeds thereof, to secure the payment in cash of the Total of Payments and all other amounts due or to become due hereunder. Holder is granted a right of set-off or lien on any deposit or sums now or hereafter owed by Holder to Buyer(s).

### B. *Truth In Lending Act*

■ Initially, the Court notes that TILA "must be liberally construed in favor of the consumer." *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir.1982). Furthermore, "TILA requirements are enforced by imposing a sort of strict liability in favor of consumers who have secured financing through transactions not in compliance with the terms of the Act. 'It is strict liability in the sense that absolute compliance is required and even technical violations will form the basis for liability.'" *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295, 1299 (D.Del. 1990) (citations omitted). In *Smith v. No. 2. Galesburg Crown Finance Corp.*, 615 F.2d 407 (7th Cir.1980), the Seventh Circuit provided the Court with clear guidelines for evaluating complaints regarding violations of the Act. *Smith* stated:

It is not sufficient to attempt to comply with the spirit of TILA in order to avoid liability. Rather, strict compliance with the required disclosures and terminology is required. Many violations of TILA involve technical violations without egregious conduct of any kind on the part of the creditor. However, Congress did not intend that the creditors should escape liability for merely technical violations. Thus, while it may be true, in some sense ... that the terminological violations here are inconsequential, the fact remains that they are violations. Any misgivings which creditors may have about the technical nature of the requirements should be addressed to Congress or to the Federal Reserve Board, not to the courts.... We will therefore require strict adherence to the required terminology under the statute and regulations, and we will not countenance deviations from those requirements, however minor they may be in some abstract sense. *Id.* at 416–417. (citations omitted).

In "closed-end" consumer credit transactions, the Truth In Lending Act requires a seller/creditor to make certain disclosures to protect the consumer. A list of the required disclosures is provided at 15 U.S.C. § 1638(a)(1)–(13). Included in this list is the requirement that in purchase money transactions a creditor must disclose any security interest taken in the property purchased. Section 1638(a)(9) provides:

**§ 1638. Transactions other than open end credit plan**

**Required disclosures by creditor**

(a) For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable: (9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as a part of the credit transaction, or (B) property not purchased as a part of the credit transaction identified by item or type.

Required disclosures must conform to the applicable regulations governing Section 1638, commonly referred to as "Regulation Z," 12 C.F.R. § 226 *et seq.* *Matter of Din-*

*gledine,* 916 F.2d 408 (7th Cir.1990) ("Congress has demonstrated an unmistakable intention to treat administrative rule making and interpretation under TILA as authoritative." (citation omitted)). These regulations state:

> The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18. 12 C.F.R. § 226.17(a)(1).
>
> and,
>
> (g)(2) In a transaction in which a series of payments varies because a financial charge is applied to the unpaid principal balance, the creditor may comply with this paragraph by disclosing the following information ... **(m)** *Security interest.* The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type. 12 C.F.R. § 226.18(g)(2), (m).

In *Marshall v. Security State Bank of Hamilton,* 121 B.R. 814 (C.D.Ill.1990), *aff'd on other grounds by In Re Marshall,* 970 F.2d 383 (7th Cir.1992), this Court found that TILA is designed to inform the consumer "as to the nature of the transaction" so that he or she may "be able to compare and shop for credit from various creditors." *Id.* at 816. To this end, the regulations requiring disclosures to be clear, conspicuous and segregated from irrelevant information have, taken the form of what is commonly referred to as the "Federal Box." *Id.* at 816. *See also* 12 C.F.R. § 226.17(a)(1), Supp. I (1993).[3] Compliance with these regulations is satisfied when the creditor places all the disclosures on one side of one document (unless there is not enough room) or groups the disclosures together within the Federal Box. *See* 12 C.F.R. § 226.17(a)(1) and § 226.18(m), Supp. I (1993).

■ Where the point of disclosure is to advise the purchaser that the seller/creditor seeks to obtain a security interest in the property purchased, the disclosure must generally identify the property. 12 C.F.R. § 226.18(m), Supp. I (1993). In *Matter of Dingledine,* 916 F.2d 408 (7th Cir.1990), the Seventh Circuit noted that the purpose of the disclosure statement is merely to disclose the fact of a security interest in the "general category" of property purchased. "The consumer must look to the security agreement to ascertain the exact items securing the loan." *Id.* at 411. Thus, in this case, TILA is satisfied if the disclosure statement acknowledges that the creditor intends to take a security interest in the "goods or property being purchased" without specific reference to the vehicle itself. Disclosure by incorporating references outside the disclosure statement, however, is not "clear and conspicuous" because it "obscures the relationship of the terms to each other" by segregation and thus does not comply with TILA. *See* 12 C.F.R. § 226.17(a)(1) and § 226.18(m), Supp. I (1993). *See also Marshall v. Security State Bank,* 121 B.R. 814, 816 (C.D.Ill. 1990) ("the actual reference to the vehicle is outside the 'Federal Box' and cannot be considered to be part of the required disclosures"). Thus the sole issue in this case is whether the disclosure inside the "Federal Box" satisfies the requirements of TILA.

■ Where a creditor violates the TILA by failing to disclose its security interest in the property purchased, the debtor is entitled to damages.[4] 15 U.S.C. § 1640(a)(2).

---

3. "Clear and conspicuous" means, among other things, that the disclosures must be presented in a way that does not obscure the relationship of the terms to each other." "Segregation of disclosures" means that the disclosures "may appear on a separate sheet of paper or may be set off from other information on the contract or other documents: by outlining them in a box, by bold print dividing lines, by a different color background, by a different style type." 12 C.F.R. § 226.17(a)(1), Supp. I (1993).

4. Liability for failure to make a "material disclosure" is limited to rescission cases. For rescission purposes, Regulation Z limits the meaning of the term "material disclosures" to "the annual percentage rate, the finance charge, the amount financed, the total of payments, and the payment schedule." 12 C.F.R. § 226.23(a)(3) n. 48. *See Rowland v. Magna Millikin Bank,* 812 F.Supp. 875, 880 (C.D.Ill.1992) (with respect to rescission, the regulations do not consider failure to disclose a security interest as a material non-

Title 15 U.S.C. § 1640(a)(2) provides that liability is to be twice the amount of any finance charge in connection with the transaction, not to exceed $1,000.

■ In cases where a creditor is liable for non-disclosure, courts also may award attorney's fees and costs. 15 U.S.C. § 1640(a)(3). However, determination of the amount of fees awarded is left to the sound discretion of the Court and must be assessed on a case by case basis. In some cases, an attorney's fees will exceed the $1,000 ceiling on damages; however, the Seventh Circuit cautions district courts that an award of fees which greatly exceeds the amount of damages at stake "requires strong support from the circumstances of the particular case." *Pine v. Barash*, 705 F.2d 936, 938–39 (7th Cir.1983) *citing and distinguishing Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729 (7th Cir.) (per curiam), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978).

**C. *Summary Judgment***

■ Federal Rule 56(c) Summary Judgment is appropriate when there remains no genuine issue of material fact upon which a reasonable jury could find in favor of the non-moving party, and the moving party is entitled to judgment as a matter of law. Although the moving party on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file, to show that a rational jury could return a verdict in this party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–27, 106 S.Ct. 2548, 2552–55, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348,

1355–56, 89 L.Ed.2d 538 (1986). In essence, the inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury, or whether the evidence is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. The Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992). Disputed facts are material when they might affect the outcome of the suit. *First Indiana Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992). A metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356.

**III. DISCUSSION**

■ At issue is whether Defendant–Creditor failed to identify a security interest in the goods or property being purchased. The Court finds that the Defendant violated TILA because the Security Agreement did not disclose in a clear and conspicuous manner that Defendant took a security interest in the vehicle purchased. The disclosure itself only states that the security interest is in the right of set-off; it makes no mention of a security interest in the "goods or property being purchased." While it is true that the contract indicates elsewhere that the seller has a security interest in the "property described above," it is not clear whether that statement refers to the automobile or whether it refers to the property described in the disclosure section (i.e., money, credit or other property in the possession of the Holder). Further, the paragraph at the bottom of the contract, which mentions the "property described above," is outside the disclosure statement within the Federal Box and thus does not comply with the requirement that

disclosure); *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295 (D.Del. 1990). Thus, where a debtor simply seeks damages, "material non-disclosure" is not the standard for liability. Rather, failure to disclose the terms and existence of a security agreement pursuant to § 226.17 and 226.18(m) will result in

judgment as a matter of law. This distinction is supported by the statutory provision regarding damages. In Section 1640(a)(3), Congress distinguished between actions to enforce liabilities imposed by the previous sections and "actions in which a person is determined to have a right of rescission." 15 U.S.C. § 1630(a)(3).

disclosures be grouped together.[5]

■ Because TILA is construed in favor of protecting the consumer, a technical violation is sufficient for an award of damages, even if rescission is not being sought. Accordingly, the Court finds that Defendant's failure to clearly and conspicuously identify a security interest in the property purchased is a non-disclosure which violates TILA and entitles Plaintiffs to damages.

Section 1640(a)(2) provides that damages are to be twice the amount of any finance charge in connection with the transaction, not to exceed $1,000. In this case the finance charge was $870.00. Twice that amount equals $1,740.00. Thus, the Court will award Plaintiffs $1,000 for Defendant's failure to properly disclose the Security Agreement.

■ Plaintiffs are also entitled to reasonable attorney's fees and costs. 15 U.S.C. § 1640(a)(3). However, before the Court will make an award of attorney's fees, Plaintiffs must submit a supporting affidavit which indicates the amount of fees required and the method of calculation. This affidavit should comply with the standards set forth in *Gusman v. Unisys Corp.*, 1993 WL 48043 (7th Cir.1993) and *Pine v. Barasch*, 705 F.2d 936 (7th Cir.1983).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. # 6–1) is **GRANTED** and judgment is awarded in the amount of $1,000.00 plus attorney's fees and costs. Plaintiffs shall submit an affidavit for the amount of attorney's fees and costs requested, including the manner in which the fees were calculated, within twenty-one (21) days from the date of this Order. Defendant will be permitted to respond. The Court will reserve ruling on the amount of the attorney fee award until these briefs are submitted. **CASE TERMINATED.**

5. Although irrelevant to the issue in this case, the Court notes that the Defendant had the option of checking a box identifying "goods or property being purchased" as the preferred security interest, but chose not to select that option, leading the Court to believe that Defendant did not intend to create a security interest in the property purchased. However, the existence and scope of the security interest created has not been raised by Plaintiffs' Motion and is thus irrelevant.