**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**
**Plaintiffs,**

v.

**Mariam SANTOS, Peter J. Burns, and Michael F. Hollendoner, Defendants.**

**No. 02 C 8236.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 10, 2003.

Alexander T. Moore, Steven Justin Levine, Peter J. Tarsney, Securities & Exchange Commission, Chicago, IL, for Securities and Exchange Commission, plaintiff.

Thomas Anthony Durkin, Durkin & Roberts, Peter B. Shaeffer, Nancy Anne Temple, Nancy A. Temple, Esq., Diane Christine Fischer, Gomberg, Kane &

Fischer, Ltd., Ronald P. Kane, Thomas Andrew Volz, Kane & Fischer, Ltd., Chicago, IL, for Miriam Santos, Peter J. Burns, Michael F. Hollendoner, defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

## I. INTRODUCTION

Plaintiff Securities Exchange Commission ("SEC") has filed a complaint against Miriam Santos, Peter J. Burns, and Michael F. Hollendoner alleging securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. Defendants Burns and Hollendoner move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief may be granted and Fed. R.Civ.P. 9(b) for failing to plead fraud with particularity.

## II. FACTS

The facts alleged in the Complaint are as follows. Miriam Santos, then City Treasurer of the City of Chicago ("City"), was responsible for overseeing the investment, through the purchase and sale of securities, of approximately two and one-half billion dollars in City funds. Investments by the City Treasurer's Office were supposed to be allocated pursuant to a competitive bidding process. In May of each year, the City would investigate and approve broker-dealers who submitted and returned a Request for Proposal ("RFP") to the City. The RFP included a provision that required the firm to comply with the Chicago Municipal Code. Once a broker-dealer was authorized to do business with the city, he was then allowed to submit his firms daily investments rates to the Treasure's Office. According to the terms of the competitive bidding process, the Treasurer would then invest with the broker-dealer offering the lowest daily rate. De-

fendants Burns and Hollendoner were registered representatives of authorized broker-dealers.

From 1995 to 1999, the SEC alleges that Santos, Burns, and Hollendoner were involved in a scheme to defraud the City. Santos allegedly directly and indirectly demanded illegal cash payments and campaign donations from Burns and Hollendoner in order to secure their receipt of the City's investment business. In one instance, the SEC claims that Santos demanded that defendants purchase for her campaign headquarters $7,500 worth of furniture she had picked out. According to the SEC, Burns and Hollendoner complied with Santo's demands and thus remained two of the City's top broker-dealers. The SEC further alleges since Santos would not accept business from brokers who refused to make campaign contributions, Burns and Hollendoner would not have been able to secure business from Santos without the illegal payments.

## III. DISCUSSION

In deciding a motion to dismiss, all well-pleaded factual allegations in the complaint must be accepted as true, and all reasonable inferences from those facts must be drawn in the light most favorable to the plaintiff. *Szumny v. American Gen. Fin., Inc.,* 246 F.3d 1065, 1067 (7th Cir.2001). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Id.*

### A. Section 10(b) of the Federal Securities Laws

Burns and Hollendoner argue that the SEC fails to state a claim under Section 10(b) of the federal securities law as well as Rule 10b–5 promulgated thereunder. Specifically, Burns and Hollendoner claim

that the SEC fails to allege: (1) a duty to disclose; (2) material misrepresentations or omissions; and (3) fraud "in connection with" the purchase or sales of securities.

### 1. Rules 10b–5(a) and (c): Duty to Disclose

Burns and Hollendoner's first argument is that the SEC's complaint for a non-disclosure scheme should be dismissed because they had no duty to disclose the alleged illegal payments under Rules 10b–5(a) and (c). To support this contention, Defendants cite to *Chiarella v. United States,* 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) and argue that fraud liability under Rule 10b–5 does not attach for failure to disclose material information unless a party is under a duty to do so.

Burns and Hollendoner's reliance on *Chiarella,* however, is misplaced. In that case, the Supreme Court decided on the question of whether one who learns from confidential documents of an impending corporate takeover violates § 10(b) if he fails to disclose his knowledge before trading in the target company's securities. The issue, therefore, was whether the non-disclosure itself constituted a violation of subsections (a) and (c) of Rule 10b–5.

■ In this case, the SEC alleges a violation of subsections (a) and (c) of Rule 10b–5 through facts establishing that Burns and Hollendoner participated in a "scheme to defraud" and engaged in "practices" that "operated" to deceive the City. These allegations satisfy the plain language of Rule 10b–5(a) and (c). Here, the violation (the scheme to defraud) itself attaches liability. Therefore, I find the complaint property alleges a cause of action under subsection (a) and (c) of Rule 10b–5.

### 2. Rule 10b–5(b): Material Misrepresentations or Omissions

Burns and Hollendoner contend that the SEC's complaint alleges no statement by either defendant which is false and no statement which is misleading due to an omission of a material fact, as required by Rule 10b–5(b). The complaint does, however, allege that Burns and Hollendoner, through their brokerage firms, made express statements to the City that omitted to make reference to their fraudulent scheme. These express statements were in the form of RFPs given by Burns and Hollendoner's brokerage firms to the City in order to qualify as a City broker. (Compl.¶ 14).

Additionally, violations of subsections (a) and (c) of Rule 10b–5 "creates an independent duty to disclose. Failure to do so thus gives rise to a violation of Rule 10b–5(b)." *In re Initial Public Offering Securities Litig.,* 241 F.Supp.2d 281, 381–82 (S.D.N.Y.2003). Burns and Hollendoner attempt to distinguish this case, by arguing *In re Initial Public Offering Securities Litig.* is limited to market manipulation, is unpersuasive. Although the defendant's violation in that case was related to market manipulation, the district court's reasoning supports the conclusions that the rule is not limited to market manipulation, but rather, encompasses all illegal activity. The court reasons, "...participants in the securities market are entitled to presume that all of the actors are behaving legally;" silence that conceals *illegal activity* is therefore intrinsically misleading and (presuming the illegality is also material) is always violative of Rule 10b–5(b). *Id.* at 382 *(emphasis added).* For these reasons, I find the complaint properly alleges a cause of action under subsection Rule 10b–5(b).

### 3. Section 10(b): Connection with the Purchase or Sale of Securities

Section 10(b) requires that a fraudulent device or scheme be "used or employed, in connection with the purchase or sale of any security...." 17 U.S.C. § 78j(b). Rule 10b–5 also requires a connection with the purchase or sale of securities. 17 C.F.R. § 240.10b–5. Burns and Hollendoner contend the complaint should be dismissed for failure to plead the "in connection with" element.

■ The Supreme Court has adopted a broad reading of the "in connection with" test, reasoning that "the statute should be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.'" *SEC v. Zandford*, 535 U.S. 813, 819, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) (quoting *Securities and Exchange Commission v. Capital Gains Research Bureau*, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)). A fraudulent scheme that coincides with the sale of securities can satisfy the "in connection with" test. *Zandford*, 535 U.S. at 825, 122 S.Ct. 1899.

In Zanford the defendant broker persuaded William Wood to open a joint investment account for him and his daughter. The Woods gave the defendant general power of attorney to engage in securities transactions without prior approval from the Woods. The defendant sold securities in the Woods' account and made personal use of the proceeds. The SEC filed a complaint alleging defendant violated § 10(b) of the Securities Exchange Act of 1934 by engaging in a scheme to defraud the Woods. The defendant argued that, although the misappropriation of the proceeds were fraudulent, the securities transactions themselves were lawful, and therefore the "in connection" requirement was not met. The Court disagreed with defendant's argument, stating "[t]he securities sales and respondent's [defendant's] fraudulent practices were not independent events." *Id.* at 820, 122 S.Ct. 1899. The Court held the "in connection with" requirement was satisfied. *Id.* at 825, 122 S.Ct. 1899. As the court reasoned, "[i]t is enough that the scheme to defraud and the sale of the securities coincide." *Id.* at 822, 122 S.Ct. 1899.

■ Taking the allegations in the complaint as true, defendants' fraudulent payment scheme coincides with their securities transactions. Just as the defendant's embezzlement scheme in Zanford was not complete until he liquidated securities to steal the cash, Burns's and Hollendoner's improper payment scheme was not complete until they purchased securities with City money and made their commissions on those purchases. Compl. ¶ 23 (Burns and Hollendoner earned thousands of dollars in compensation from investment business given as a result of the secret payments.). Thus, the complaint properly alleges that Burns's and Hollendoner's improper payment scheme was in connection with the purchase or sale of securities.

### B. Rule 9(b): Pleading the Fraudulent Scheme with Particularity

Lastly, defendants Burns and Hollendoner contend the complaint should be dismissed for failure to plead fraud with the particularity required by Fed.R.Civ.P. 9(b). Rule 9(b) requires a complaint to allege the "who, what, when, where, and how of the fraud." *SEC v. System Software Assocs., Inc.*, 145 F.Supp.2d 954, 957 (N.D.Ill.2001).

■ Paragraph 22 of the complaint meets the particularity requirement. It details when the improper payment was made (in or about March 1998), by whom it was made (Burns and Hollendoner), and how it was paid (through Santos's first

deputy). The complaint further specifies (i) when other brokers were pressured by Santos for payments; (ii) when they declined; and (iii) how this caused Santos to cut off from City securities investments from those who refused to pay. Compl. ¶ 23–27.

Burns and Hollendoner argue that each security transaction has not been separately identified, that specific dates for each transaction have not been stated, and that the complaint does not distinguish between the conduct of Burns and Hollendoner. These particulars, however, are not necessary tot provide them with fair notice of the fraud, but is evidentiary matter appropriate for discovery and trial. See *SEC v. Feminella,* 947 F.Supp. 722, 733 (S.D.N.Y. 1996); *Dunham v. Independence Bank of Chicago,* 629 F.Supp. 983, 987 (C.D.Ill. 1986) (Rule 9(b) motion denied where plaintiffs alleged "the range of dates" on which the fraud occurred because "[n]o pleading need set out the detailed evidence plaintiffs would use to support the claim at a later date"); *Onesti v. Thomson McKinnon Secs., Inc.,* 619 F.Supp. 1262, 1264 (C.D.Ill.1985) ("Plaintiffs cannot be expected to specify the exact time and particular place of each factual omission and misrepresentation'" complaint complied with Rule 9(b) by specifying the "approximate time frame" of the transactions).

 Moreover, when information giving rise to securities fraud is exclusively held by defendants, the particularity requirement of Rule 9(b) is relaxed. See *Corley v. Rosewood Care Ctr., Inc. of Peoria,* 142 F.3d 1041, 1051 (7th Cir.1998); see also *Reshal Assoc., Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226, 1231 (C.D.Ill.1990) (plaintiff is required to distinguish among defendants "to the extent that they may reasonably be expected to do so," but the complaint need not attribute specific acts to specific defendants "if the complaint sufficiently describes the fraudulent acts

and provides the individuals with sufficient information to answer the allegations"). To the extent details are not alleged in the complaint, Burns and Hollendoner have exclusive control over those precise facts surrounding the fraudulent scheme. Therefore, the complaint meets the pleading requirement of Fed.R.Civ.P. 9(b).

## IV. CONCLUSION

For the aforementioned reasons, Burns's and Hollendoner's Motion to Dismiss is denied.